# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCAST MUSIC, INC., et al., | Case No.: 1:17-cv-00188-DAD-BAM |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| JEFFREY ALAN HATHCOCK individually and d/b/a ROCK N' HORSE SALOON; and JANET HAYRE, individually and d/b/a ROCK N' HORSE SALOON, | (ECF No. 12) |
| Defendants. | |

On June 21, 2017, Plaintiffs Broadcast Music, Inc., Welsh Witch Music, Coral Reefer Music, Sony/ATV Songs LLC, Unichappell Music Inc., Sloopy II Inc. d/b/a Sloopy II Music, Bocephus Music, Inc., Warner-Tamerlane Publishing Corp., Big Yellow Dog LLC d/b/a International Dog Music and Scamporee Music ("Plaintiffs") filed a motion for default judgment against Defendants Jeffrey Alan Hathcock, individually and d/b/a Rock N' Horse Saloon and Janet Hayre, individually and d/b/a/ Rock N' Horse Saloon ("Defendants"). No opposition was filed.

The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for August 25, 2017. Having considered the moving papers and the Court's file, the Court RECOMMENDS that Plaintiffs' motion for default judgment be GRANTED.

1

**I.     BACKGROUND**

Plaintiffs allege five claims of willful copyright infringement arising from Defendants' unauthorized public performance of the following musical compositions: (1) Dreams; (2) Margaritaville; (3) Piece of My Heart; (4) Blues Man; and (5) Love Done Gone.  Plaintiffs allege that these musical compositions were performed without authorization at Defendants' business establishment, known as Rock N' Horse Saloon, on July 12, 2016.  Doc. 1, Complaint ¶¶ 20-21 and Schedule.

According to Plaintiffs' moving papers, Plaintiff Broadcast Music, Inc. ("BMI") is a "performing rights society" which licenses the right to publicly perform a repertoire of nearly 12 million copyrighted musical compositions works on behalf of the copyright owners of these works. The remaining Plaintiffs in this action are the copyright owners of the five individual compositions identified above from whom BMI has acquired the right to bring this action. Doc. 12-1, Declaration of John Ellwood ("Ellwood Decl."), ¶¶ 2, 5.

BMI's main business is to license the right to publicly perform any of the works in BMI's repertoire by means of "blanket license agreements." Id. at ¶¶ 2-3. These licenses are available to music users, such as the Defendants, and permit music users to perform any of the nearly 12 million musical compositions in the BMI repertoire. Id. at ¶ 5.

BMI operates as a non-profit-making performing rights organization. Id. at ¶ 3. BMI distributes all of the money it collects in license fees from licensees, such as restaurants, hotels and nightclubs, as royalties to its affiliated publishers and composers, after the deduction of operating expenses and reasonable reserves. Id.

Between July 2015 and August 2016, BMI repeatedly informed the Defendants of the need to obtain permission for public performances of copyrighted music. Doc. 12-4, Declaration of Brian Mullaney ("Mullaney Decl.") at ¶¶ 3-8. BMI offered to enter into a blanket license agreement with the Defendants, but Defendants failed to do so. Id. at ¶¶ 3, 8.  BMI's records indicate that BMI licensing personnel telephoned the Defendants on twenty-eight (28) occasions and sent more than twenty-five (25) letters. Id. at ¶¶ 3, 4, 5, 7, 12, 13.

Plaintiffs filed the underlying action on February 9, 2017. Doc. 1. Plaintiffs personally served Defendant Jeffrey Alan Hathcock with the summons and complaint on February 16, 2017, and served Defendant Janet Hayre via substituted service on February 18, 2017. Docs. 4, 5, Proofs of Service. Defendants did not respond to the complaint, and on April 3, 2017, Plaintiffs filed a request for entry of default. Doc. 6. The following day, on April 4, 2017, the Clerk of the Court entered default against Defendants. Docs. 7, 8. Thereafter, on June 21, 2017, Plaintiffs filed the instant motion for default judgment. Doc. 12.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002); *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III. ANALYSIS

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds these factors weigh in favor of granting Plaintiffs' motion for default judgment.

### A. Possibility of Prejudice to Plaintiffs

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds

Plaintiffs would be prejudiced if default judgment is not granted, and this factor weighs in favor of default judgment.

**B.  Merits of the Plaintiffs' claims and the Sufficiency of the Complaint**

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

Plaintiffs' complaint alleges violations of the United States Copyright Act. Under that act, the owner of a copyright has the exclusive rights to publicly perform the copyrighted work, and may institute an action against an infringer of that copyright.  17 U.S.C. §§ 106, 501.  To establish copyright infringement, plaintiffs must show (2) ownership of the allegedly infringed material and (2) demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001), as amended (Apr. 3, 2001), *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002), *and aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002).

Here, Plaintiffs allege that they own valid copyrights for the musical compositions in the BMI Repertoire:  (1) Dreams; (2) Margaritaville; (3) Piece of My Heart; (4) Blues Man; and (5) Love Done Gone.  Complaint at ¶¶ 4-13 and Schedule.  Plaintiffs further allege that Defendants are liable for the unauthorized public performance of these musical compositions, and the Defendants were not licensed or otherwise authorized to publicly perform these musical compositions even though they were previously and repeatedly admonished regarding the need for a license.  Complaint ¶¶ 19, 20, 26.

The Court finds that Plaintiffs' complaint sufficiently states a claim for copyright infringement, and this factor weighs in favor of default judgment.

**C.  The Sum of Money at Stake in the Action**

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F Supp.2d at 1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

4

Here, Plaintiffs seek a total judgment of $20,830.00, which includes statutory damages of $15,000.00, attorneys' fees in the amount of $5,000.00 and costs in the amount of $830.00. Doc. 12. The Court finds the amount at stake is proportional to the harm caused by Defendants' conduct and, therefore, this factor does not weigh against entry of default judgment.

### D. The Possibility of a Dispute Concerning Material Facts

The facts of this case are straightforward, and Plaintiffs have provided the Court with well-plead allegations and a declaration with exhibits in support. Here, the Court may assume the truth of well-plead facts in the complaint following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendants' failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. *See*, *e.g.*, *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").

### E. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendants' default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Courts have found that where defendants were "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001). Upon review of the record, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. According to the Court's docket, it appears that Plaintiffs properly served Defendant Jeffrey Alan Hathcock by personally delivering a copy of the summons and complaint to him on February 16, 2017. Doc. 5. Plaintiffs also properly served Defendant Janet Hayre by substituted service on February 18, 2017, by leaving copies with Defendant Hathcock, her son, on February 18, 2017, and by mailing copies on February 21, 2017. Doc. 4. Service of process was therefore sufficient.[1]

---

[1] Relevant here, Federal Rule of Civil Procedure 4(e) permits an individual to be served by delivering a copy of the summons of the complaint to the individual personally or by following state law where the district court is located. Fed. R. Civ. P. 4(e)(1), (2)(A). Under California law, if the summons and complaint cannot with reasonable diligence be

5

Moreover, Plaintiffs served Defendants with notice of the Clerk's entry of default and the motion for default judgment. Doc. 10 and Doc. 11 at p. 20. Despite ample notice of this lawsuit and Plaintiffs' intention to seek a default judgment, Defendants have not appeared in this action to date. Thus, the record suggests that they have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### F. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendants have not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiffs are entitled to the entry of default judgment against Defendants. The Court therefore will recommend that Plaintiffs' Motion for Default Judgment be granted.

### IV. Requested Relief

#### A. Injunctive Relief

Plaintiffs seek an injunction permanently enjoining Defendants from engaging in any acts infringing on Plaintiffs' rights in any of their copyright musical compositions. The Copyright Act authorizes the court to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502.

A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

---

personally delivered to the person to be served, the summons and complaint may be served by leaving a copy at the person's usual place of business in the presence of a person apparently in charge and by thereafter mailing a copy of the summons and complaint by first-class mail to the place where a copy was left. Cal. Civ. Proc. 415.20(b).

compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiffs have made the requisite showing for a permanent injunction. First, Plaintiffs have suffered an irreparable injury because, despite repeated warnings by BMI, Defendants continued to infringe on Plaintiffs' copyrights. Second, monetary damages are inadequate to compensate for the injury because Defendants have failed to respond to BMI's warnings and there is no assurance that they will stop any infringing activity. Third, as Plaintiffs point out, Defendants cannot claim any legitimate hardships as a result of being enjoined from committing unlawful copyright infringement, and thus the balance of the hardships weighs in favor of Plaintiffs. Fourth, and finally, the public interest would not be disserved by a permanent injunction restraining Defendants from infringing Plaintiffs' copyrights.

### B. Statutory Damages

Plaintiffs seek $15,000.00 in statutory damages for five instances of copyright infringement. Under the Copyright Act, a plaintiff may recover: (1) actual damages and any additional profits of the infringer, or (2) statutory damages of not less than $750 or more than $30,000 as the court considers just. 17 U.S.C. § 504(a), (c)(1). However, if the infringement was committed willfully, the court "may increase the award of statutory damages to an award of not more than $150,000." Id. § 504(c)(2).

In this case, Plaintiffs contend that the infringement was willful, and request damages in the amount of $15,000, which represents an award of $3,000 for each of the five infringements. Doc. 12 at 12. Plaintiffs indicate that the lost license fees in this action would have been approximately $5,075. Doc. 12 at p. 14, Doc. 12-4, Mullaney Decl. at ¶ 17. Plaintiffs are therefore seeking approximately three times that amount in damages. The Court finds this amount reasonable. *See*, *e.g.*, *Broadcast Music, Inc. v. JMN Restaurant Management Corp.*, No. 14-cv-01190-JD, 2014 WL 5106421, at *3 (N.D. Cal. Oct. 10, 2014) (finding statutory damage award of slightly more than three times the license fees to be reasonable); *Broadcast Music, Inc. v. Hynes Enterprises, Inc.*, No. CV 13-7957-GAF (Ex), 2014 WL 12607835, at *4-5 C.D Cal. Apr. 30, 2014) (awarding statutory damages award in

amount of three times the licensing fee); *Broadcast Music, Inc. v. Crawford*, No. 1:12-cv-01903-JLT, 2014 WL 1285660, at *7-8 (E.D. Cal. Mar. 28, 2014) ("Several courts have calculated statutory damages by tripling the amount of unpaid licensing, or that an amount approximately three times the licensing fee is appropriate;" finding an award three times the amount of the unpaid licensing fees to be appropriate).

### C. Attorneys' Fees and Costs

Plaintiffs also request attorneys' fees and costs incurred in this action. In a copyright infringement action, the Court has the discretion to "allow the recovery of full costs" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

As to attorneys' fees, counsel has not billed on an hourly basis, and declares only that BMI was charged a flat fee of $5,000 to handle this action through default judgment. Doc. 12-2, Declaration of AnnMarie Mori ("Mori Decl.") at ¶ 9. Counsel does not detail the number of hours worked, but does indicate that she has been a member of the California Bar since 2001. Id.

Prevailing hourly rates in the Fresno Division of this district, for competent, experienced attorneys range between $250-$380 per hour with the highest rates generally reserved for those attorneys who possess in excess of 20 years of experience. *See Singh v. Hancock Nat. Res. Grp.*, No. 1:15-cv-01435-LJO-JLT, 2017 WL 2275029, at *7 (E.D. Cal. May 25, 2017) (noting that hourly rates generally accepted in the Fresno Division for competent, experienced attorneys are between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience; applying hourly rate of $400 for attorney with more than 20 years of experience and hourly rate of $225 for attorney with less than ten years of experience), findings and recommendations adopted by 2017 WL 2630082 (E.D. Cal. Jun. 19, 2017); *Trujillo v. Singh*, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017) (applying hourly rate of $300 for attorney with more than 15 years of experience).

At an hourly rate of $350, less than 14.5 hours would be compensated in this case. At an hourly rate of $300, less than 17 hours would be compensated in this case. The Court therefore finds the amount of $5000 to be reasonable for the filing of a complaint, request for entry of default and motion for default judgment.

8

Plaintiffs additionally request an award of costs incurred in the amount of $830, which includes the filing fee of $400 and fees for service of process in the amount of $430. Doc. 12-2, Mori Decl. at ¶ 11. The Court finds the requested costs reasonable.

**V.     CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' motion for default judgment (Doc. 12) be GRANTED;
2. Defendants Jeffrey Alan Hathcock and Janet Hayre and their agents, servants, employees and all persons acting under their permission or authority be permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by Broadcast Music, Inc.;
3. Plaintiffs be awarded $15,000 in statutory damages;
4. Plaintiffs' request for attorney's fees in the amount of $5,000 be granted; and
5. Plaintiffs' request for costs in the amount of $830 be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **August 23, 2017**                    /s/ *Barbara A. McAuliffe*
                                                     UNITED STATES MAGISTRATE JUDGE